Good morning. May it please the Court. Shereen Charlotte, Federal Defender of San Diego, on behalf of the appellant, Mr. Antonio Oceguerra-Aguirre. Mr. Oceguerra's conviction should be reversed for a number of reasons, several of which I'd like to discuss today. First, there was the improper admission of the numerous prior crossings, the text evidence. Second, there are issues surrounding the prosecutor on misconduct in summation and in the admission of the in-court experiment, as I'll call it. And finally, if I have enough time, I want to address the search of the vehicle and how Sedano-Ariano impacts upon the reasons of suspicion determination. In the first instance, the text evidence, the eight prior crossings of the border by the suburban car, should not have been admitted under either rules 401, basic relevance, 404B, the prior acts rule, and 403, it simply wasn't relevant for any proper purpose. It certainly wasn't relevant for the two purposes asserted by the government. First, well, actually, it was relevant for one purpose, but we agreed and agreed to stipulate that as to the text crossing on the day of the arrest on July 7th, that we would agree to stipulate that that time should be admitted, that one record was indeed relevant. The government refused to accept that stipulation, refused to be satisfied with the admission of that one crossing. Rather, they came back with the theory that, well, we need to admit it, district court, because it shows that Mr. Osagara shouldn't have been nervous when he crossed on July 7th because he crosses all the time. Now, the problem with that theory of admissibility is it simply is far too attenuated, and especially in light of the test. Well, if he wasn't nervous about crossing the border, isn't it suggested he might have been nervous because he had a load of marijuana on the car? Well, perhaps, Your Honor, had the government been able to establish two things, that would be a fair inference. First, they should have been able, in order to admit this evidence, to establish that he actually was in the suburban on all of these prior crossings. They cannot do that. They did not do that. Would it be a reasonable inference to draw that he was the registered owner of the vehicle? He was the registered owner, but I don't think that he was. But would it be a reasonable inference that he was driving the vehicle when it came across as other times? I don't believe that it would be a necessary inference. And I asked that. I said, would it be a reasonable inference? No. Okay. Why not? Because, well, I mean, anecdotally, I can tell the Court that as a public defender, I see many, many, many cases where people are driving a car that is not registered to them as they cross the border. I think that is a common occurrence. So I don't think that the simple fact that he's the registered owner of the car alone is something that should permit that inference, especially in light of the number of prior crossings and the potential alternative use of the testimony. I think that there should have been something more to establish that he indeed was driving. All the government can show from that evidence is that the car crossed. All they could really prove was that the suburban shouldn't have been nervous. So is that a proper subject of argument? In other words, the fact that it comes out at all is something you can say, well, you can either put your client up there and ask him about it or make the argument, as you just did there. Well, the problem in this case was actually ‑‑ I don't think it is really a reasonable inference, but the problem in this case was compounded by the district court's limiting instruction, which basically told the jury, and it's at Excerpt of Records. Yes, it is. Okay. They basically told the jury, you can consider it for his demeanor. Well, it said he was limited to his demeanor. Right. But essentially that came a couple days after the testimony already had been introduced in the case. But I think that the district court was telling the jury that that's what it's there for. That's why it was introduced. So the jury is going to assume that he was indeed the driver. The district court didn't say, jury, it's up to you to decide, as is done sometimes in other 404B instructions. It's up to you to decide whether or not he drove the car on those particular occasions. And that's not what this instruction said. I think this instruction has them assuming that, indeed, he was the driver. Without that instruction, though, don't you think the prosecution could have argued that, as you see, he's crossing the border and transporting drugs all the time? I mean, it seems to me that the court was trying to limit the inferences that the jury might draw from that. I agree with you. And I think that the best way to prevent those type of bad inferences would be not to admit the testimony. I think its utility and relevance was so limited in light of the risk of the dangerous inference. I thought there should be a limiting instruction. I told the court that. Did you offer one? Pardon? Did you offer one yourself? My limiting instruction that I offered was at ER 526. I told the court that I wanted a limiting instruction to state something to the effect that there was no evidence he was engaged in any illicit smuggling activity during the prior process. And I specifically objected when he proposed this one at page ER site 659, saying I object. I think that you're telling the jury to consider it as to his demeanor. And he overruled my objection. There was another part of his limiting instruction, which was it was limited, also limited to the mechanical aspects of the vehicle. That's right. Now, as I recall, the defendant resided in Los Angeles. Yes. That was a pretty long haul from L.A. to the border and back. Why? And there was evidence that the Suburban was not mechanically working properly. Why wouldn't that? Now, wouldn't it be a reasonable inference to draw that if that vehicle could make that number of trips from L.A. to the border and back, that car's in pretty good shape. I have a few responses to that. First and foremost, that wasn't the government's theory of admitting the evidence. And under this Court's precedent in United States v. Mayans, they have to set forth the evidentiary basis, the theory of relevance, and why they're seeking to admit the evidence. They stated repeatedly, and they continue to maintain on appeal, in the response brief at page 20, they state unequivocally that this evidence was admitted for two limited purposes. First, to show the time of the crossing on July 7th. Second, demeanor. They have not traveled under the theory of operability. But the limited instruction, though, was limited to the mechanics. Something about the mechanics of the vehicle. Operability. It throws in a sentence about the operability of the car. Correct. But that was just the district court's sui tante discussion of that. So what's wrong with that?  First of all, because of the need to fashion it. I don't think that's a proper purpose, either, because it's the government who put at issue, when the district court first indicated the district court at one point during the trial indicated to us at excerpt from record page 426 through 430, that if we put on evidence about the operability of the car, if the defense   could bring in all the other texts, which is all the crossings into Mexico as well, and that the car was never referred to secondary and never seized by custom service. So we made a decision, and that's on the record, we didn't call our expert   We did not call witnesses regarding the crossings. We did not call witnesses regarding the operability of the car, which we indeed had planned to do and had told the jury this was not just pulling this out of my hat. This was indeed proposed testimony. It did not come in for this strategic reason. The government themselves introduced evidence regarding the operability of the car by introducing all the receipts, and they did so for their own theory, which was, yeah, the car might have been having these problems or, hey, here's all these receipts. This shows that Mr. Oseguera was fixing any problem himself. He's a skilled mechanic. He fixes these things himself. That was their theory. And so under this Court's cases, in Sanchez-Robles, in Castillo, they can't put a fact at issue and then get to introduce 404B about that fact. It needs to be something responsive to the defense's claims. Did you make any statement in your opening statement, any contention in that regard? Yes. In fact, we did. And we researched that. That is, that the car wasn't running well? Yes. Yes, we did. But we researched that in front of the district court, who made a ruling that that did not open the door to the other text regarding on the issue of operability. He said, no, it's just opening statement. Opening statement is not evidenced by the lawyers. And, indeed, had we known the district court's position, we wouldn't have gone forward with that opening. He didn't tell us until subsequent to the opening statement. But it has never been the government's theory in the district court, nor in this court, that operability is the basis. So the judge made a ruling after your opening statement, it's not going to be allowed, I'm not going to consider this car running funny business? He said, well, what the judge's ruling was at Exit for Record 426 through 430, was if we put on evidence about the operability of that car, she was going to be able to bring in all the text, in all its glory, all 16 crossings, the times, the dates, the gory details. And so we made a strategic decision. I told the court. Now, did this come out in the government's case in chief, the text evidence? Yes. It was admitted in the government's case in chief, as well as the admission of all of the receipts and any evidence on the operability of the car. I think that in terms of the government's argument that Sanchez-Robles supports admission of the testimony, I think I dealt with that fairly well in the reply brief. But first of all, Sanchez-Robles says no less than four times that that's a matter for rebuttal, and the reason why it was relevant in that case, and indeed inextricably intertwined, was because Mrs. Sanchez took the stand and said, yes, I crossed the border, no, I don't know this man, I've only known him for one month, and my daughter borrowed the car on this night. The text directly refuted all of those points. So in a sense, indeed, it was a part of the case because she had put that at issue, and that's a large distinction between Sanchez-Robles and the Kearns case and what happened here. And that's the distinction in the inextricably intertwined cases. I know the government filed a 20HA letter citing some of those, and probably due to some communication difficulties within my own office. I hadn't received it. I'm sure she sent it to me, but I hadn't looked at it until this morning. I don't think those cases say anything distinct from the principles that she's already enunciated in the brief, but I'm going to review them. If there's something else I need to add on that particular issue, I'll file a responsive letter. Okay. Do you want to get to the prosecutor on misconduct? Yes, I do. The prosecutor on misconduct issue, first I want to note that there was an objection to the argument, and that objection can be found at Excerpt of Record, page 701. This is not a plain error issue. And the government, I think, recognizes this to a degree. They cite both standards of review. I think the standard of review for this Court is abuse of discretion. And it's not a plain error issue for a number of reasons, not the least of which is that there was an objection. But I also filed an eliminate motion to exclude this type of testimony and necessarily the argument, though I certainly wasn't planning on there being argument on something that was an improper ground. But that eliminate motion is at Excerpt of Record, at CR 24. And immediately after the closing argument, the judge, in discussing this, said to me, well, you opened the door to this structure evidence anyway, or to the structure argument with this no-tools argument. Thus, he didn't find that it was a plain error type issue. He addressed it and essentially said to me, I would have let this in. I would have let in the testimony. I think the argument was proper because you made this no-tools argument first. He was wrong as a matter of fact. And I cited the Court to the Excerpt of Record, page 698. The prosecutor raised this. She raised it by introducing the receipts. And she said, I'm introducing the receipts because I want you juried see he's a skilled jury mechanic. I also raised it in a new trial motion, which I didn't include in the excerpt. It's in the court record at 41 and 42. And in there at page 5, I specified the transcript cites to that argument, the improper argument and the objection. The government, at Supplemental Excerpt of Record that they have submitted with this court, page 104, they responded to the new trial motion. And they never once said I waived anything. They never once said she didn't object to this. The hearing transcript is part of the designations on appeal. It's not in the ER. I can easily include it. There was never a discussion that I waived it or I didn't object. The Court just didn't agree with me and rolled against me. At the opening brief, I also said this happened over defense objection. So I think it's clear that there was an objection. I think the argument that they made is specifically what's prohibited by United States v. McGowan. McGowan, in McGowan, the expert witness, as Your Honor is quite familiar, testified that, you know, this is like GM, this is a business, you know, they have employees. And that's essentially what this argument said. Pineda-Torres says you can't make that kind of argument. And I think that in light of the additional testimony by the value expert during his qualifications that he infiltrates narcotic smuggling organizations, he's an expert in narcotic smuggling trafficking, as the prosecutor told the jury, and these are at ER Site 465 and Supplemental Excerpt at Record Site 49, that that coupled with this argument is error. And it infected the trial. And it should require reversal. And indeed, the cases, both McGowan and Pineda-Torres were cases where the defendant didn't testify, yet the error was deemed sufficiently harmful. This Court's recent decision in the Cervantes case validates the kind of defense theory that we were traveling under, this lost load theory. So I think that the combination of Cervantes, McGowan, and Pineda-Torres do indicate that reversal is warranted here, that we had a valid theory, the error was not harmless. I'd say I have three minutes left. Final reserve. May it please the Court. Deborah Rhodes, United States. If I may, I'll begin with the allegation of prosecutorial misconduct in the closing argument. This is not a case that should be properly analyzed under Vallejo in its line of cases. This is not a case where there was any expert testimony or any affirmative testimony at all by the government of a drug organization. So why is it the proper subject of argument, then? Well, the argument here was very unlike argument that would be made in a Vallejo case. It didn't talk about the compartmentalization of rules. It didn't talk about the growers, the packers, the people who recruit drivers, the drivers themselves, the distributors. It didn't go through that whole litany. And in Vallejo, McGowan, Pineda, all of the cases that discuss what the harm in Vallejo was, the harm in Vallejo in its cases is that a single driver who's not charged with conspiracy is linked with all these other people as part of the organization. The argument is kind of an off-the-wall argument, isn't it? By any evidence, the thing about structure? Right. And structure was not argued here. If I can characterize or summarize what was argued here, and it's found in the excerpts of records 706 to 709, what was argued was, let's look at the defense. The defense is a lost load. In the opening statement, the defense made it very clear that the theory of their case was that he was an innocent bona fide purchaser who had purchased a suburban, driven it for four months, and unbeknownst to him, there was marijuana in the gas tank, and that there was a lost load. It was a third party. It was some other person who somehow put it there. Well, that was clear that that was their theory of the defense from the minute of opening statement until closing argument and all of the cross-examination in between. And the government simply said, let's look at that. That's the defense they're putting on. Is that a reasonable defense? And in doing so, the government said, what kind of drug trafficker, not meaning the defendant, what kind of drug trafficker, the unknown person that he's pointing at, would run his drug business that way? Because let's face it, marijuana is a drug business. That's what drew the objection. That's on page 708. Yes, it's a business. Drug smuggling is a business. And the reference to business there, and it's not like business is some nasty word. The reference to business was the business. Organized crime. Wait. She didn't say organized crime. And the business is validly inferred from the record. That's the whole point of putting the value testimony on. The government asserts that the value testimony, the expert testified, this is $31,000. We all agree that marijuana is there for distribution. It's a commodity. It's there to be sold. That's why it has a market value. The defense even argued that in her closing statement, that she was trying to say, who's going to sell this moldy old marijuana? Obviously, when it got put in there, it would have been put in there when it was fresh because it was there for sale. So this wasn't a contested fact. And this is a fact that's reasonably inferrable from the record. It's a commonsensical fact. The government was simply saying, what kind of business person is going to, A, stick $31,000 worth of something into a gas tank and then sell the car for $2,000? That makes no sense. That's not believable. That's not plausible. You're not going to forget about $31,000 and then accidentally sell your car for two. The other possibility is that someone stuck it in there while he owned the car, and he didn't know about it. But that also makes no sense because how is this person supposed to require the marijuana, which is very valuable? Except that's not what the argument said. The argument said the best way that the reasonable business person, the reasonable drug smuggler, knows the best way to get products to an intended destination is so they can make money to tell the driver, to tell the person who's going to take it to take it wherever they go. Right. And that's the culmination. Which is sort of the, you know, unintended. Go ahead. I'm sorry. No, no. I mean, that borders pretty closely on the. . . Well, she's arguing knowledge. Knowledge is what's up for grabs here. That's what the jury has to decide. And she's saying, and I believe, if I'm correct, that's at the culmination of her argument. Yes. She first explores the implausibility of, well, I hope that somehow I can track this car down, and I hope that I can sneak inside the gas tank again and unweld it and get my $31,000 out. She says something to the jury like that's a hope and a prayer. And then she ends up saying the much better way for a businessman to run his business is to simply tell the driver it's there so he can retrieve his valuable product. And the government asserts this is very much like the testimony that's allowed in Murillo, not Vallejo. The harm in the Vallejo cases, as I read them, is that you have a driver who's now linked with a whole crew of people, each of whom has a specialized job, when there's no affirmative evidence other than the expert to those other people. Murillo, on the other hand, says, hey, look, you can put in unknowing courier testimony. You can put in an expert that just says, and this is based on Cordova, you can put in an expert that says, look, drug business, I don't know if they see business people, drug people aren't going to leave a very valuable commodity in the hands of an unknowing courier. It doesn't make sense. It's not plausible. And the government believes that this argument is squarely within, and it's only argument, it's not an expert as Murillo and Cordova would allow. It's simply logical inferences based upon the value of the marijuana and the defense that was put on from the very get-go from the opening statement. So I cited Asheson in my brief, allowing reasonable inferences from the facts. I have also cited Garcia-Glazar, which talks about the defense can open up something in opening statement and make it relevant. And I'll turn to you. Okay. I think we've got your argument in hand on that. Why don't you move on to the admission of the tech evidence. Thank you. I don't mean to cut you off, but I want to make sure you get to your point. No, I was making my transition. The tech evidence, first of all, is admissible in both the case in chief and in a rebuttal case. That's something that Vega recognizes itself on page 1153. It specifically talks about 404B and specifically techs and says whether the evidence is used in the prosecution's case in chief or for impeachment. There's no rule in Vega that it's not allowable in the case in chief. Similarly, that's not, the government maintains, the proper reading of Sanchez. Factually in Sanchez, procedurally in Sanchez, it came in the government's rebuttal case because it was responding to the defendant and the defendant's witnesses having taken the stand. It was responding to facts that only became relevant once the defense was presented. That's unlike the situation here. Here, the relevance of the text and the reason that it was offered initially was to rebut the defendant's false exculpatory statements that he had been in Mexico for three hours. That's relevant because if the defendant lied about that, it's more probable that he had knowledge of the marijuana being put in his vehicle in Mexico. That would be the reason to lie. In addition, it's relevant, the seven prior crossings, and it's seven. Well, the crossing on the day in question, I don't think even the defendants acknowledged that it would be relevant and visible and everything else. I take it that she now is conceding that point. She seems to have stood up here and said that at trial that she stipulated that that could come in. And the government refused to accept the stipulation for whatever reason the government chose. So the real problem is with the prior seven. Okay. And I'll move on. But for the record, the government did never stipulate there. There was an offer to stipulate by the defense. Apparently it was lost in the shuffle. There's a long record. But on pages 497 and 657, she maintained her opposition to all the text of this. Okay. So in any event, on the seven, those are also relevant because they go to the cause of the nervousness. And that was something that the jury found. Well, how does that work, though, if there's no showing that she was in or that he was in the vehicle at the time of those prior seven crossings? There is no showing. It is based upon a reasonable inference. And the government's position is that he was in the vehicle. Well, why is it a reasonable inference? That's what I asked defense counsel. It's a reasonable inference for two reasons. Because he is a registered owner of the vehicle, and it's not necessarily the case that he's going to be driving his car at all times, but it is reasonable to believe so. And Sanchez specifically addressed this fact. Sanchez specifically addressed relevance and the argument that the text reports were irrelevant because it didn't reveal the driver. And also, in that case, there were two cars that were related through text. It didn't reveal any communication between the two cars. And the Court found, this Court found, that that didn't matter as to relevance. And the Court in this case, so I would say Sanchez was actually controlling on that point. The fact that we don't know conclusively or with certainty that he was driving in those days does not make it irrelevant. What it does mean is based upon a reasonable inference, it makes it more probable that he was not nervous on the day in question. Why is that? I mean, if your testimony said we saw him all the seven times and he wasn't nervous, that would perhaps be relevant. But perhaps he was nervous every single time. Well, and that would also go to the weight. And that was something that was fair game for cross-examination and fair game for argument. In fact, counsel did on page 520. What is the preferred way of going through the crossings to not arouse suspicion? Because the cases say he looked too calm. He looked in the mirror. All these are given as indications that if one appears nervous, then that's an articulable fact. So reading the cases, I've been unable to discern how one ought to act going through the border, regarding the demeanor going through there to not be subject to secondary. All of that is up for grabs. I think it's clear after our views that the totality of the circumstances must be considered. We're not talking about reasonable suspicion. It's not what we're talking about. We're in trial. Okay. So the weight. I sent you off in the wrong direction. Sorry. It was my fault. The weight of the evidence is what's at issue here. And Sanchez says that that evidence is admissible and relevant, notwithstanding the fact that we don't know for a certainty that he was driving the car. And the court said that that's something that the jury may infer and is not required to infer. And she, in fact, pointed out in cross-examination that we don't know who the driver was. She was free to cross-examine on that point. She was not limited on that point. And she was free to argue that point. I would make an analogy to this. It's like phone records. You can have a phone record showing calls being made to another number. You don't know with any certainty who's on the phone. But it does make association or some other fact and issue that they're being offered for more likely than not, more likely because of the connection. It's like bank records. You don't know who makes a deposit or who makes a withdrawal, but you know who the account holder is. And I would submit that it's similar with these tax records. How about the argument that defense counsel made with the limiting instruction, which suggested to the jury that he was in the car? The limiting instruction was first proposed on government or Exhibit 526. And specifically, defense counsel objected to the form that the court proposed. And the court said to her, why don't you write an instruction that you would like? And he offered that she should write one and submit one. And then the second limiting instruction, the record is silent as to whether or not she ever did that. I don't believe that that happened. Then the second limiting instruction was submitted, and counsel agreed as to the form that was Excerpt 657. And then when the instruction was given, there was no objection. That's Government Supplemental Excerpts of Record 86. So it's clear that she objected to the evidence itself. But she had an opportunity to submit a limiting instruction to her liking and apparently did not do so, was invited to explicitly by the court, did not request a contemporaneous limiting instruction when the evidence came in, finally agreed to the instruction proposed by the court, and did not object when it was given. So the government believes that the limiting instruction, in fact, reduces any prejudice that she might be arguing. That, combined with the ability to cross-examine and to argue about this evidence to begin with. Also, I think it's important to note that the court excluded a lot of text evidence. And let me come back to the third reason for it being relevant. The third reason for it being relevant wasn't something that the government initially offered it for in the motion to eliminate. But it's something that became relevant when the defense said during opening statement repeatedly, and it was the defense who raised this issue, who said the car was malfunctioning. In fact, we're going to call an expert witness who's going to tell you that if you had this in your gas tank, this is precisely the kind of problem that you would have, and we're going to call other witnesses who will say they rode in the car while it was malfunctioning. And there were all kinds of receipts, or there were all kinds of repairs that the defendant tried to do on the car to figure out why it was malfunctioning. He just never figured out why it was malfunctioning. He didn't know it was the marijuana. All of that's in the opening statement of the defense, which is in the government supplemental experts of records. So during the trial, the government now said, well, you know what, the texts are not relevant for a third purpose. Because who's going to be driving this car that's completely unreliable all the way down to Mexico from Los Angeles? And the court said, look, to the defense, you said that in opening. I'm not going to let the government go into any more trips to Mexico and the times of the trips, because they were late at night. I'm not going to let them go into that unless you tell me you are in fact going to make good on your opening statement. You've opened the door, but I'm going to let you keep your fluidity, the fluidity of your defense, and that's specifically experts of records 495 to 500. So he says, even though you opened the door, if you tell me you're going to back off it now, I won't let the government talk about any of the trips to Mexico, nor the late time at night going into Mexico. And the court in this case limited the text evidence very much, did not let the text records themselves come in, did not let the summary chart come in. The texts were offered only by oral testimony. That's excerpt of record 515. Kept out all the trips to Mexico. Kept out all the times of the trips. Kept out, and this is the government's argument, and I can say I'm not going to have time to fully make it, but I think I've addressed why we believe the evidence is relevant and was proper to issues pending at trial. I'd like now to briefly address the theory that we believe is more correct. The court admitted it under 404B, and we do not believe that that's a basis to reverse, because we believe it was admissible in any event, and the court can affirm on any ground that the Alexander case cited in the government's brief. But at the same time, the government believes that the proper legal theory for admission was inextricably intertwined. The government believes that Sanchez is controlling on this point, that this case is on all fours with Sanchez, except for the fact Sanchez is offered in its rebuttal. But I don't think that procedural difference makes a difference here, because here, the issues that were at stake were already at stake in the government's case in chief. And in addition, the court. Kennedy. Did the judge admit it as intertwined? No, he admitted it as 404B. The government offered a theory as inextricably intertwined, that it was intrinsic evidence, specifically intrinsic to his state of mind at the time he was committing the crime, showing his nervousness, intrinsic to his knowledge of his own guilt, his consciousness of guilt, therefore the false exculpatory. So the government's theory was that this evidence was intrinsic. So give her back to the fact that his car went through the border, and we don't know anything about his demeanor, and therefore it's relevant to show that he was nervous when he went through the border? I mean, I'm not being facetious, but that's your theory. There's an inference. There's the inference, if it was his car, it's reasonable to believe he was driving it before. And if he drove through the border before, it's reasonable to believe that he would not be frightened or nervous simply by the border procedures, simply by... That's a really tough inference to draw on a routine basis. I'm not driven through that border. I don't know how many times, and every time I go through that border, I get nervous. You know, I mean, you want, these are, you're building one inference on another on another on another. Is there any limit? I think there's two. Where's the limiting principle of that inference? Well, there's two inferences here, two inferences. One is that resident owners often drive their car. It's reasonable to infer he was driving his car. And it's reasonable to infer that he has, he's familiar with border procedures because he's crossed the border before. That would make him less nervous. That would tend to show that the cause of his nervousness was his own knowledge of the marijuana rather than being confronted with border officials. And this goes to weight. Doesn't this go to the weight of the evidence? Isn't the jury... And that's all that's put on nervousness, a subjective judgment to begin with. Well, there's no ban on evidence of nervousness. No, no, I understand that. But I mean, then to have all this supporting testimony that he must not have been nervous because he's been through before. It just seems pretty attenuated to me. It was fully examined on cross-examination. I mean, the real point was to show some prejudice, wasn't it? Not a nervousness. That wasn't your point. He hoped to get it in that he was making a lot of late-night crossings. And he couldn't let you go that far. That didn't come in. I know it didn't come in, but that was... And the government didn't use this for a 404B purpose. That's why we don't think that it's 404B. It's hard to see how it's 404B. I mean, you haven't talked about the 803A admission, which may be your strongest argument. Well, that goes to reliability. That just has to go to objections that shouldn't come in because it's not reliable. It's a public record under 803A, and the officer laid the foundation for its admissibility, which he would have to do in addition to relevance, saying the procedures for how... Okay, I take your point. Okay. So it comes in as a hearsay exception under the 803. The relevance is what I've been addressing, and I just have a little bit of time left. I would like to say this. I'd like to say inextricably inclined is the right way to go. And then finally, there's no prejudice. Okay? There is no prejudice. You may not like nervousness testimony. You may think it's up for grabs. No, no. Nervousness is fine. I'm just saying that then layering all this other evidence on top of the observation of evidence to show that the observation was, in fact, truthful. Except for the day of the arrest, how would the prior crossings be intertwined? The prior crossings are intertwined because, again, it goes with the state of mind while he's committing the crime. The government's subpoena to another citing all the other circuits shows that the language in Karnes and Sanchez that says 404B, which is extrinsic, those are acts that are meant to reflect adversely on character. That's central to 404B. This was not used to reflect adversely. We weren't saying these prior crossings were drug crossings or these prior crossings show he's a bad person or these prior crossings show he has a bad character. We're saying the prior crossings just tend to show familiarity, therefore reflecting on the cause of his nervousness, which the jury would have to determine. I'm out of time, but I'd like to say harmless error by faith, because this is a guy who's a registered owner, driving a car long distances for four months, making repairs on the car, offering a defense he never delivers, and the seven crossings didn't matter. Okay. And you didn't get to the search, but if Mr. O'Toole or Mr. Haynes asks, we'll say, we'll attest that you really intended to attack Paulina Terrazon, but we cut you off because of lack of time. I'm waiting for you. Okay. I first want to state that the precise problem Judge Pai has identified with this testimony is that it requires inference on tenuous inference, and in light of the potential alternative prejudicial use of the testimony, that that simply shouldn't have been admitted. And I couldn't disagree more with the prosecutor's characterization as harmless error. This was a case where he presented a defense that he bought the marijuana with the car, excuse me, with marijuana already concealed inside it. There was testimony from a government agent that the marijuana was crumbling and falling apart. There was testimony from the defense that the marijuana was crumbling and falling apart. So who's a bad businessman? Pardon me? The crumbling and falling. But, indeed, there was concrete evidence to support the defense. Right. There was. But in a sense, though, they did find a lot of marijuana in the car, and explain to me why this isn't harmless error at the end of the day. At the end of the day. And the other crossings. In light of the limiting instruction on everything, why isn't this harmless error? In the first instance, I think that the prosecutor improperly argued that he crossed eight times, but this is the time he got caught. And that's at Excerpt from Record, page 701. I think that was an improper use. I think the fact that the limiting instruction didn't come for three days. And at the time that the evidence came in, we discussed the possibility of limiting instruction, and no one could agree on one. And that's why there wasn't one given. But the harm occurred. And. What words did the prosecutor use that would add up to that? He crossed a lot of times before. This proves it. At Excerpt from Record, page 701, she stated that we know he crossed before. He crossed eight times. At least we know he did between the date he bought the car and the date he got caught with the drugs. And those were her words. I think that the jury could easily have inferred, hearing that testimony, hearing that in the opening statement, this is a case about marijuana smuggling, hearing evidence that from a narcotics smuggling expert, that he was smuggling on those eight prior occasions. And make no mistake, that's exactly what they wanted the jury to think. And that's why this testimony was introduced. And she argued, well, this is the date he got caught. And I think that that jury clearly was being told to draw the inference that he just didn't get caught those other times. The marijuana wasn't packaged, and that's a fact that every single witness admitted was highly unusual. This wasn't a slam dunk for the jury. The jury was out a full day and a half. They came back with a note at Excerpt of Record 775, 777 that said they were deadlocked. And then they wanted to see the marijuana again. And then they still deliberated another half a day before coming back with the guilty verdicts. The other cases which have been reversed where, for the same non-constitutional error, where there wasn't a coherent theory of defense, and I think less coherent than this one, Pineda-Torres and McGowan and Cervantes validates this defense theory, demonstrates clearly it wasn't harmless error, this nor the prosecutor on this conduct in the closing. Thank you. Roberts. Thank you both for your arguments. They were very well presented. In case it's heard, we'll take it under advisement.
judges: Thomas, Paez, Reed